IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DEVONTA J. MONROE,            )
                              )
       Plaintiff,             )
                              )
    v.                        )    1:24CV770
                              )
JAMIE ADAMS, et al.,          )
                              )
       Defendant(s).          )

ORDER AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, a detainee at the Scotland County Detention Center, submitted a pro se complaint under 42 U.S.C. § 1983 and requests permission to proceed *in forma pauperis* pursuant to 28 U.S.C. § l915(a). Plaintiff names three police officers and an assistant district attorney as Defendants and seeks several million dollars in damages.

Because Plaintiff is "a prisoner seek[ing] redress from a governmental entity or officer or employee of a governmental entity," this Court has an obligation to "review" this Complaint. 28 U.S.C. § 1915A(a). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint, if [it] – (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Applicable here, a plaintiff "fails to state a claim upon which relief may be granted," 28 U.S.C. § 1915A(b)(1), when the complaint does not "contain sufficient *factual matter*, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal,

556 U.S. 662, 678 (2009) (emphasis added) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.[1]

The final ground for dismissal under 28 U.S.C. § 1915A(b)(2) generally applies to situations in which doctrines established by the United States Constitution or at common law immunize governments and/or government personnel from liability for monetary damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing sovereign immunity of states and state officials under Eleventh Amendment); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between 42 U.S.C. § 1983 and common-law immunity doctrines, such as judicial, legislative, and prosecutorial immunity);

---

[1] Although the Supreme Court has reiterated that "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Iqbal, 556 U.S. at 697, respectively)).

cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines and special defenses, available only to public officials, preclude or severely limit the damage remedy").

For the reasons that follow, some of the claims listed in the Complaint should proceed but others should be dismissed pursuant to 28 U.S.C. § 1915A(b) because they fail to state a claim on which relief may be granted or seek monetary damages from a defendant with immunity from such relief.

According to the Complaint and an attached Declaration from Plaintiff, Plaintiff is African-American and, at least at the time of the events alleged in the Complaint, a gang member. (Docket Entry 2 at 9.) On December 3, 2022, Defendants Jeffrey R. Cooke, II and Jeremy White, two detectives with the police department in Laurinburg, North Carolina, arrested Plaintiff for being a felon in possession of a firearm and larceny of a firearm. (Id. at 7.) They then allegedly engaged in a videotaped interrogation of Plaintiff concerning his crimes and the activities of other persons. (Id.) At some point, the officers allegedly became angry because Plaintiff could not or would not answer their questions or did not provide the answers they wanted. (Id.) They then turned off the recording, after which Defendant White allegedly stated, "O.K. you want to play dumb huh. I got something for your gang banging ass" and Defendant Cook allegedly stated "[w]e gonna act dumb to [sic] monkey." (Id.) Plaintiff was released on bond a few days later, although he was later convicted as a result of the charges and served some amount of time in prison. (Id. at 7-8.) While he was out on

bond, several other events allegedly occurred. First, the Declaration states that in March of 2023, Plaintiff received word that certain unidentified persons had received a copy of the video of his interrogation in their inboxes, which caused persons in the community to say that he was snitching and should stay away from them. (Id. at 18.) Then, a short time later, assailants shot Plaintiff in the back stating "that's what snitches get." (Id.) Later, on August 14, 2023, the video was "released to the public" in a way that is not explained in the Complaint other than by way of saying that the video was posted on multiple social media platforms and received thousands of views. (Id. at 7.) When Plaintiff complained to the Laurinburg police, Defendants Cooke and White allegedly told him that they were not involved with the August release but had given the video to the local prosecutor's office. (Id. at 8.) Defendant White implied or stated that the district attorney's office must have made the August release. (Id. at 19.) He and Cooke then allegedly laughed and told Plaintiff to move out of the area. (Id.) Plaintiff also spoke with Defendant Mitchell Johnson, who is the Laurinburg police chief, only to be told that the background in the video was not from the Laurinburg Police Department. (Id. at 20.) However, another officer stated to Plaintiff that it was clear that someone had recorded the released video using the Department's equipment and a cellular telephone. (Id.) Plaintiff reports that, when he was in prison, he was assaulted and threatened by other prisoners calling him a snitch and saying they had seen or heard about the video. (Id. at 19.) The Declaration also states that people still call Plaintiff a snitch and that unidentified persons have shot into his house where his family lives. (Id.) Based on these alleged facts, Plaintiff named Cooke, White, and Johnson as Defendants along with

Jamie Adams, the prosecutor who handled Plaintiff's state criminal charges. All Defendants are named in both their individual and official capacities.

Turning first to Defendant Johnson, the Complaint clearly states no claim for relief against him. The Complaint theorizes that, because he is in a supervisory position and had general access to the interrogation video, he may have been involved in the video's releases or may have conspired with the other Defendants to release it. However, it contains no facts supporting that conjecture or that would allow a reasonable inference that Defendant Johnson was involved in the releases. Nor does his position as a supervisor support a claim under § 1983 because theories of *respondeat superior* or liability predicated solely on a defendant's identity as a supervisor do not exist under § 1983. Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). Defendant Johnson should be dismissed from the case entirely.

Plaintiff's official capacity claims against the remaining Defendants should also be dismissed. Defendant Adams is an employee of the State of North Carolina, which means that any official capacity claims are the same as a suit against the State of North Carolina. However, neither the State nor it agencies are "persons" subject to suit under § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989). Further, the Eleventh Amendment to the United States Constitution would limit any relief to a prospective injunction to remedy an ongoing violation of federal law and Plaintiff seeks no such remedy. McBurney v. Cuccinelli, 616 F.3d 393, 399 (4th Cir. 2010). Therefore, the Complaint does not state a viable claim against Defendant Adams in his official capacity.

As for Defendants Cooke and White, they are employed by the Laurinburg Police Department and the City of Laurinburg, not the State. The concepts just discussed do not bar the official capacity claims against them but those claims fail for different reasons. Under North Carolina law, a police department is merely a component part of a municipality and not a separate entity that can sue or be sued. See Fields v. Tucker, No. 1:10CV844, 2011 WL 4345306, at *1 n. 1 (M.D.N.C. Sept. 15, 2011) (unpublished), recommendation adopted in relevant part, 2012 WL 174820, at *1–2 (M.D.N.C. Jan. 20, 2012) (unpublished). Plaintiff's attempted official capacity claims are, therefore, claims against the City of Laurinburg. So viewed, they fail because,

> "[a] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell v. Department of Soc. Servs., 436 U.S. 658, 691 (1978) (emphasis in original). "Only in cases where the municipality causes the deprivation 'through an official policy or custom' will liability attach." Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003) (quoting Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). "Because section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the 'official policy' requirement was 'intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby to make clear that municipal liability is limited to action for which the municipality is actually responsible.'" Riddick v. School Bd. of Portsmouth, 238 F.3d 518, 523 (4th Cir. 2000) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 479 (1986)). "To state a cause of action against a municipality, a section 1983 plaintiff must plead (1) the existence of an official policy or custom; (2) that the policy or custom is fairly attributable to the municipality; and (3) that the policy or custom proximately caused the deprivation of a constitutional right." Pettitford v. City of Greensboro, 556 F.Supp.2d 512, 530 (M.D.N.C. 2008).

Roseboro v. Winston-Salem/Forysth County School Board of Education, No. 1:14CV455 2014 WL 5304981, at *4 (M.D.N.C. Oct. 15, 2014) (footnote omitted), recommendation

adopted, No. 1:14CV455 (M.D.N.C. Dec. 9, 2014). Here, Plaintiff does not plead the existence of any policy or practice fairly attributable to the Laurinburg Police Department or the City of Laurinburg that caused or in any way related to the alleged releases of his interrogation video by Defendants. Therefore, all of the official capacity claims should be dismissed.

Plaintiff's remaining claims are his individual capacity claims against Defendants Cooke, White and Adams. As to those Defendants, Plaintiff raises multiple theories of liability under § 1983. The first asserts that Plaintiff had a First Amendment right to answer the questions asked by Defendants White and Cooke however he wished and to choose not to provide them with the information they wanted. The Complaint alleges that Defendants violated his rights by releasing the video in retaliation for his answers/failure to answer. Although there is a right to remain silent in response to police questioning under the Fifth Amendment of the Constitution, that right is only violated so that a § 1983 claim is supported where any compelled statements are later used in a criminal prosecution. Burrell v. Virginia, 395 F.3d 508, 512–14 (4th Cir. 2005). On the other hand, cases do not generally support a First Amendment right to refuse to answer questions from police. Moore v. Garnand, 83 F.4th 743, 751-52. (9th Cir. 2023) (citing cases). Claims under § 1983 based on such a theory are subject to dismissal on the basis of qualified immunity. Id. There would likewise be no right to lie to police and the Court is unaware of any cases entitling a person being interrogated to be believed by police. Therefore, the Complaint does not state a viable First Amendment claim.

-7-

Case 1:24-cv-00770-TDS-LPA    Document 3    Filed 10/31/24    Page 7 of 12

However, the Complaint also states that the release of Plaintiff's interrogation video violated his right to due process because the release did not occur pursuant to any established court proceeding or order which would have allowed Plaintiff the opportunity to contest the release. To the extent Plaintiff seeks to pursue a claim for procedural due process violations, he has not established entitlement to any relief; however, where a plaintiff can show that a "state actor created or increased the risk of private danger, and did so directly through affirmative acts, not merely through inaction or omission" the plaintiff can state a due process claim under the state-created danger doctrine. Doe v. Rosa, 795 F.3d 429, 439 (4th Cir. 2015). Here, the Complaint claims that Defendants engaged in affirmative acts in the form of the releases of the video of Plaintiff's interrogation and that the releases created a risk that he would be assaulted by third parties who considered him a snitch. It further alleges that the danger actually resulted in multiple assaults on him, his property, and his family. Therefore, the Complaint does successfully state a due process claim against Defendants Cooke and White based on their alleged threats combined with the subsequent releases of the video and against Defendant Adams based on Cooke and White's alleged statements or indications that Defendant Adams played some role in the second release. It is not clear from the Complaint exactly who released the video, but it contains sufficient factual support for the involvement of Defendants Cooke, White, and Adams given that Plaintiff may plead theories of liability in the alternative. Plaintiff's due process claim should proceed against these three Defendants in their individual capacities.

The Complaint also alleges that Defendants violated Plaintiff's equal protection rights. The Equal Protection Clause of the Fourteenth Amendment "is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985). "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). Typically, equal protection claims involve allegations that the defendants "treated [a plaintiff] differently because he is a member of a suspect class or because he exercised a fundamental right." Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010). Suspect classes based on race, alienage, or national origin receive strict scrutiny, while classes based on gender and illegitimacy receive lower, but still heightened, scrutiny. City of Cleburne, 473 U.S. at 439–41. Here, the Complaint alleges that Defendants released the video of his interrogation but did not release such videos of other persons based on his race and his status as a gang member. Being a gang member is not a protected class, but the Complaint alleges that Defendant Cooke, with Defendant White present, used a racial slur to refer to Plaintiff while threatening him for not cooperating with their questioning. These allegations suffice at this stage to state a potential claim for relief based on an equal protection violation.

As for Defendant Adams, the Complaint does not allege that he was present at the time Defendant Cooke used the slur, that he ever made a similar statement himself, or that he later became aware of it prior to the releases of the video. In fact, there are simply no allegations whatsoever in the Complaint as to any possible racial motive for Defendant Adams to release the video. Therefore, it does not state any equal protection claim as to Defendant Adams.

Finally, the Complaint alleges that Defendants conspired to deprive Plaintiff of his civil rights in violation of 42 U.S.C. § 1985(3). As stated above, the Complaint does allege that Defendants violated certain of Plaintiff's civil rights. The alleged statements by Defendants Cooke and White pointing to Defendant Adams having a role in at least one of the releases of the video and the lack of any apparent motive by Defendant Adams other than potentially helping Defendants White and Cooke retaliate against Plaintiff by placing him in danger are sufficient at this time to allege that the three remaining Defendants conspired to violate Plaintiff's rights. The conspiracy claim under § 1985 can also proceed as to these Defendants.

As for Plaintiff's *in forma pauperis* application, § 1915(b)(1) requires that he make an initial payment if funds exist for such a payment. A review of his *in forma pauperis* application reveals that they do not. Therefore, the Court will not order any initial partial payment, but will instead order that his custodian withdraw payments from his prisoner trust account if funds become available in the future.

-10-

IT IS THEREFORE ORDERED that *in forma pauperis* status be granted for the sole purpose of entering this Order and Recommendation.

IT IS FURTHER ORDERED that Plaintiff's trust officer shall be directed to pay to the Clerk of this Court 20% of all deposits to his account starting with the month of December of 2024 and thereafter each time that the amount in the account exceeds $10.00 until the $350.00 filing fee has been paid.

IT IS FURTHER ORDERED that the Clerk shall send Plaintiff summonses for Defendants Cooke, White, and Adams. Plaintiff must fill out the summonses, including addresses suitable for service, and then return them to the Clerk. Failure to provide an addresses wherein service may be made will result in the dismissal of the action as to any unserved defendant after 90 days from the filing of the complaint. See Fed. R. Civ. P. 4(m).

IT IS FURTHER ORDERED that the United States Marshal, upon return of the properly completed summonses shall serve the Complaint on the Defendants.

IT IS RECOMMENDED that all of Plaintiff's claims against Defendant Johnson, all of the official capacity claims, the First Amendment claims, and the equal protection claim as to Defendant Adams be dismissed pursuant to 28 U.S.C. § 1915A for failing to state a claim on which relief may be granted or seeking monetary damages from a defendant with immunity from such relief, but that Plaintiff's individual capacity due process claims and

-11-

Case 1:24-cv-00770-TDS-LPA   Document 3   Filed 10/31/24   Page 11 of 12

IT IS THEREFORE ORDERED that *in forma pauperis* status be granted for the sole purpose of entering this Order and Recommendation.

IT IS FURTHER ORDERED that Plaintiff's trust officer shall be directed to pay to the Clerk of this Court 20% of all deposits to his account starting with the month of December of 2024 and thereafter each time that the amount in the account exceeds $10.00 until the $350.00 filing fee has been paid.

IT IS FURTHER ORDERED that the Clerk shall send Plaintiff summonses for Defendants Cooke, White, and Adams. Plaintiff must fill out the summonses, including addresses suitable for service, and then return them to the Clerk. Failure to provide an addresses wherein service may be made will result in the dismissal of the action as to any unserved defendant after 90 days from the filing of the complaint. See Fed. R. Civ. P. 4(m).

IT IS FURTHER ORDERED that the United States Marshal, upon return of the properly completed summonses shall serve the Complaint on the Defendants.

IT IS RECOMMENDED that all of Plaintiff's claims against Defendant Johnson, all of the official capacity claims, the First Amendment claims, and the equal protection claim as to Defendant Adams be dismissed pursuant to 28 U.S.C. § 1915A for failing to state a claim on which relief may be granted or seeking monetary damages from a defendant with immunity from such relief, but that Plaintiff's individual capacity due process claims and

conspiracy claims be allowed to proceed against Defendants Cooke, White, and Adams and that his individual capacity equal protection claims be allowed to proceed against Defendants Cooke and White.

This, the 31st day of October, 2024.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**